## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JEFF KLUEH and JAKE CAMPBELL, individually and on behalf of all other similarly situated Illinois residents, | |
| Plaintiffs, | Case No.: 1:19-cv-00249 |
| v. | |
| PAUL VALLAS FOR ALL CHICAGO, LINK2TEK, LLC and JULIANA LAM | |
| Defendants. | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs JEFF KLUEH and JAKE CAMPBELL (at time "Plaintiffs"), by and through their attorney James C. Vlahakis of Sulaiman Law Group, Ltd, bring this First Amended Class Action Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure in their individual capacities and on behalf of a class of all other similarly situated persons who received automated text  messages promoting City of Chicago mayoral candidate Paul Vallas, without their consent, and in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*

### JURISDICTION, PARTIES AND VENUE

1.      This civil action arises under and is brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*  The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling or text messaging persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent.

2.      Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337, as this civil action arises from a violation of a federal statute, 47 U.S.C. §227.

1

3. Plaintiff JEFF KLUEH ("Klueh") is a natural person residing in Chicago, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

4. Plaintiff JAKE CAMPBELL ("Campbell") is a natural person residing in Chicago, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

5. Defendant PAUL VALLAS FOR ALL CHICAGO ("Vallas" or "Defendant") is a "person" as defined by 47 U.S.C. § 153(39) and is headquartered in Chicago, Illinois.

6. Vallas acted through its agents, employees, officers, members, volunteers, staffers, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

7. Defendant LINK2TEK, LLC ("Link2Tek") is Delaware corporation.

8. Link2Tek is registered with Secretary of State of North Carolina.

9. On information and belief, Link2Tek's business address is 725 Merrimon Avenue #8414, Asheville, North Carolina, 28814. Alternatively, Link2Tek's business address is 117 Flint Street #1, Asheville, North Carolina, 28801-2217.

10. According to the Delaware Department of State, Division of Corporations, Link2Tek's registered agent is Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

11. According to the North Carolina Secretary of State, Link2Tek's registered agent is MWB Corporate Services, LLC, 48 Patton Avenue, Asheville, North Carolina, 28801-3321.

12. Defendant JULIANA LAM, also known as Juliana Sullivan ("Lam") a resident of North Carolina.

13. Lam was the president and CEO of Link2Tek and the president and CEO of Link2Tek when the below described text messages were unlawfully transmitted to Plaintiffs and thousands of other persons.

14.    Lam's LinkedIn profile identifies herself as the "CEO" of Link2Tek and as the "owner" of Altert as depicted by the below image taken from her LinkedIn profile:



15.    As detailed below, Vallas entered into an agreement with Link2Tek and Lam whereby Link2Tek would transmit Vallas campaign text messages to persons identified as living in the Chicagoland area.

16.     As detailed below, Vallas used Link2Tek and Lam to send thousands of *unsolicited* campaign text messages persons identified as living in the Chicagoland area ("Class Members") despite not having the express consent of the Class Members.

17.     Alert Technology Holdings, Inc. ("ATH") is Delaware corporation.[1]

18.     According to the Delaware Department of State, Division of Corporations, ATH's registered agent is Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

19.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Plaintiffs reside in this District, Vallas is headquartered in this District and conducts substantial business in this District, and all of the conduct giving rise to the claims occurred within this District.

## BACKGROUND ALLEGATIONS REGARDING THE TCPA

9.     Section 227(a)(1) of the TCPA defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

10.     The Federal Communications Commission has warned political campaigns to comply with the TCPA and on March 14, 2016, issued an FCC Enforcement Advisory entitled "BIENNIAL REMINDER FOR POLITICAL CAMPAIGNS ABOUT ROBOCALL AND TEXT ABUSE"

11.     One portion of the FCC's Enforcement Advisory states

**Does the same prohibition against making autodialed calls to cell phones apply to sending autodialed text messages to cell phones?**

Yes. The Commission has determined that the prohibition against placing autodialed calls to cell phones without prior express consent "encompasses both

---

[1] Alert has been identified in this First Amended Complaint for possible inclusion in a future amendment should the facts demonstrate that it was an active participant in the transmission of the Political Text Messages at issue.

voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to [a wireless] service."[FN] Accordingly, only manually placed text messages are permissible without prior express consent.

file://slg-filesrv-01/TS_Users_Profile/TS_USERS/jamesv/Downloads/DA-16-264A1.pdf

12.    The FCC's website also contains the following content regarding "Political Campaign Robocalls & Robotexts:



https://www.fcc.gov/political-campaign-robocalls-robotexts

13.    In relevant part, the FCC's Political Campaign Robocalls & Robotexts posting states:

Political campaign-related underlined autodialed or underlined prerecorded voice calls (including autodialed live calls, prerecorded voice messages, and text messages) are:

▪ Not allowed to cell phones, pagers, or other mobile devices without the called party's prior express consent.

- ▪ Not allowed to protected phone lines such as emergency or toll-free lines, or lines serving hospitals or similar facilities, unless made with the called party's prior express consent.
- ▪ Allowed when made to landline telephones, even *without* prior express consent.

Robotexts are text messages generated through autodialing. Under the TCPA, these are considered a type of call and fall under all the robocall rules. As text messages generally go to mobile phones, they require the called party's prior express consent if they are generated using autodialing.

https://www.fcc.gov/political-campaign-robocalls-robotexts

14.     As set forth below, Vallas, with the assistance of Link2Tek and Lam transmitted unsolicited text messages ("Political Text Messages" or "Political Text Message") to Plaintiffs and hundreds of other persons with an ATDS.

15.     As the Ninth Circuit Court of Appeals has recognized, "language in the [TCPA] indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018).

16.     The *Marks* court analyzed and rejected the defendant's argument that its text messages did not violate the TCPA because the messages were not sent to randomly or sequentially generated telephone numbers: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Id.* at 1052.

17.     Finally, the court in *Marks* rejected the defendant's argument that the unsolicited text message that were sent did not violate the TCPA because humans had some involvement in the transmission of the text messages:

> We also reject Crunch's argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever. By referring to the relevant device as an "*automatic* telephone *dialing* system," Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated

without any human oversight or control. Common sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions. Congress was clearly aware that, at the very least, a human has to flip the switch on an ATDS. Crunch does not dispute that the Textmunication system dials numbers automatically, and therefore it has the automatic dialing function necessary to qualify as an ATDS, even though humans, rather than machines, are needed to add phone numbers to the Textmunication platform.

*Id.* at 1052-53 (citations omitted).

18.     As discussed below, consistent with the findings in *Marks*, Vallas, with the assistance of Link2Tek and Lam, sent unsolicited and non-consensual text messages to Plaintiffs' cellular telephones and the cellular phones of other people with an ATDS in violation of Section 227 of the TCPA.

**ADDITIONAL BACKGROUND ALLEGATIONS REGARDING THE DEFENDANTS**

19.     Lam's LinkedIn profile describes Link2Tek as follows:

Link2Tek is a direct contact resource that allows you to strategically target voters and deliver issue-relevant messaging with pinpoint precision!

The mission of Link2Tek is to provide powerful, more cost-effective campaign tools to arm Democrat organizations and candidates with actionable intelligence and communications that educate, influence, and activate U.S. voters.

https://www.linkedin.com/in/juliana-lam-207bb07/

20.     Link2Tek's "Team" webpage describes Lam as follows:

Prior to forming Link2Tek, LLC, Ms. Lam was Founder, CEO and COO of Healthcare Revenue Management, Inc. (HealthRev) from March 1997 through the sale of the company to Argent Financial Services. Prior to HealthRev, Ms. Lam was National Vice President for Third Party Recovery and Potential Medicaid Payment with HHL Financial Services, Inc., the largest healthcare accounts receivable company in the nation based in New York. Through her operating experience in healthcare, Ms. Lam handled the large-scale conversion of two (2) mainframe healthcare A/R management solutions and third party billing platforms. She has continued to develop her knowledge of and reputation in technological solutions, which enhance operational performance and effectiveness; she now brings this technical experience to the political arena.

https://www.link2tek.com/team

21.    Link2Tek's "Home" webpage includes a references to Alert as evidenced by the below screen capture:



22.    Link2Tek's website contains an "Education" page which states the following about "audience targeting":

**AUDIENCE TARGETING**

**Link2Tek:** Before any messages are sent, our system directly targets people using sophisticated audience modeling techniques and individual demographic data (age, race, income, and gender). Then, after messages are sent, we re-target specific populations based on the audience responses and feedback. All of this targeting is easily done within our platform, providing the necessary flexibility to simultaneously conduct distinct conversations with different individuals.

https://www.link2tek.com/education/politek-supports-p2p-alliance

23.    Link2Tek's website describes its ability to provide customers with "Unmatched Audience Targeting" as depicted by the below screen capture:



24.    Link2Tek's website contains an "Education" page which states the following:

 **1) We match more mobile phone numbers to targeted voters than any other firm**, including even the biggest GOP data firms controlled by the Koch brothers and the RNC. Remember, you can't drive turnout if you don't have the number. Because the data we access is updated every 15 minutes by the major carriers, we can deliver messages to voters that the Internet-based P2P providers cannot. Our data comes directly from the telecoms.

https://www.link2tek.com/education/p2p-plus-vs-p2p-only

25.    The above quoted webpage does not identify any "results."

26.    Link2Tek's website contains a "Legal Compliance" page which is depicted by the below screen capture:



https://www.link2tek.com/legal-compliance

27.    On information and belief, and as detailed below, Link2Tek is not compliant with TCPA.

10

28.     On December 5, 2018, Plaintiff Klueh received the below Political Text Message on his cellular telephone number, (773)xxx-9413, from Vallas, with the assistance of Link2Tek and Lam:



29.     Plaintiff Klueh did not consent to receive the above Political Text Message.

11

30.     Plaintiff Klueh did not sign any type of documents, either electronic or paper, that authorized Vallas, Link2Tek or Lam to transmit the above Political Text Message to his cellular telephone number.

31.     Vallas, with the assistance of Link2Tek and Lam, used an automated phone dialing system to send the above Political Text Message to Plaintiff Klueh's cellular telephone.

32.     On December 20, 2018, Plaintiff Klueh received the below Political Text Message on his cellular telephone number from Vallas, with the assistance of Link2Tek and Lam:



33.    Plaintiff Klueh did not consent to receive the above Political Text Message.

34.    Klueh did not sign any type of documents, either electronic or paper, which authorized Vallas, Link2Tek and/or Lam to transmit the above Political Text Message to his cellular telephone number.

35.    Vallas, with the assistance of Link2Tek and Lam, used an automated phone dialing system to send the above Political Text Message to Plaintiff Klueh's cellular telephone.

36.    On January 2, 2019, Plaintiff Campbell received the below Political Text Message on his cellular telephone number, (630)xxx-6131, from Vallas, with the assistance of Link2Tek and Lam:





37.    Plaintiff Campbell did not consent to receive the above Political Text Message.

38.     Plaintiff Campbell did not sign any type documents, either electronic or paper, that authorized Vallas, Link2Tek and/or Lam to transmit the above Political Text Message to his cellular telephone number.

39.     Vallas, with the assistance of Link2Tek and Lam, used an automated phone dialing system to send the above Political Text Message to Plaintiff Campbell's cellular telephone.

40.     None of the Political Text Messages that Vallas, Link2Tek and/or Lam sent to Plaintiffs contained the word "STOP" which could have allowed Plaintiffs to opt of future Political Text Messages.

41.     On information and belief, Vallas, Link2Tek and/or Lam purchased or otherwise acquired Plaintiffs' cellular numbers from a mass list or database and did so without Plaintiffs' written permission.

42.     On information and belief, Vallas, Link2Tek and/or Lam Chicago purchased or otherwise acquired hundreds of Illinois based cellular numbers from a mass list or database and did so without the written permission of the cellular subscribers.

43.     Vallas, Link2Tek and Lam knew Plaintiffs' phone numbers were cellular telephone phone numbers before Vallas, Link2Tek and/or Lam transmitted the Political Text Messages to Plaintiffs' phone numbers.

44.     Defendant never had permission to text the Political Text Messages to Plaintiffs' cellular telephones.

45.     Vallas, Link2Tek and/or Lam used an automated phone dialing system to send the same or similar Political Text Messages to thousands of Illinois based cellular telephone numbers.

46.     As detailed below, Vallas does not claim to have obtained the express consent of the Class Members to transmit the campaign text messages at issue.

47.     Rather, Vallas issued a press release which claim, in part, that "[o]ur communications platform has been thoroughly vetted legally and is legal under FCC guidelines."

48.     Vallas' press release did not specifically refer to any so-called "FCC guidelines."

49.     Vallas' press release claims, "[o]ur vendors follow all rules and regulations."

50.     Vallas' press release did not specifically refer to any rules or regulations.

51.     Vallas' Campaign Manager, Chris Kelly has publically Tweeted that he was "pulling something together" in relation to alleged text messages being sent by a rival candidate:



https://twitter.com/Katcheck96/status/1085584412870348811

52. Vallas' Illinois Sunshine disclosures identify that Vallas paid Link2Tek $100,000 on or about October 29, 2018.

53. This payment is reflected by the below screen capture:



54. Vallas' Illinois Sunshine disclosures identify that Vallas paid Link2Tek $200,000 on or about July 20, 2018.

55. This payment is reflected by the below screen capture:

17



56.     Plaintiffs bring this claim on behalf of the following class, pursuant to Fed.
R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

57.     The Class consists of:

    a.  all persons who were sent text messages from Vallas or on behalf
of Vallas by Link2Tek and/or Lam;

    b.  where the text messages promoted the candidacy of Paul Vallas
for Mayor of the city of Chicago, Illinois ("Political Text
Messages");

    c.  where the Political Text Messages were transmitted to cellular
telephone numbers that were identified as cellular numbers at
the time the Political Text Messages were transmitted;

    d.  where the Political Text Messages were not sent by humans
typing each individual Political Text Messages (and were instead
sent by way of an automated system that constitutes an
Automated Telephone Dialing System as defined by the TCPA);

    e.  where Vallas, Link2Tek and/or Lam did not have the express
permission of the persons who were sent the Political Text
Messages; and

    f.  the Political Text Messages were transmitted to Illinois based
area codes.

18

58.     There are questions of law and fact common to Plaintiffs and the Class Members that they seek to represent.

59.     The principal legal and factual issues are whether: (a) the Political Text Messages using an automated telephone dialing system; (b) to cellular telephone numbers with Illinois area codes; (c) whether each individual cellular telephone number was typed by a human; (d) and whether this conduct violates 47 U.S.C. §§ 227 *et seq.*

60.     Another principal legal and factual issue is whether Defendants had express consent to transmit Political Text Messages.

61.     Another principal legal and factual issue may be whether Defendants truly and actually utilized so-called c and/or "P2P" technology to transmit the Political Text Messages and whether such technology is complies with the TCPA.

62.     On May 3, 2018, an entity known as "The P2P Alliance" has asked the Federal Communications Commission ("FCC") to declare that so-called "peer-to-peer" technology does not violate the TCPA.

63.     The P2P Alliance's Petition before the FCC "P2P messages are the types of communications consumers want and expect, and are delivered in a manner Congress did not intend to subject to the TCPA's restrictions on calls to mobile phone numbers."

64.     The P2P Alliance may wish to advocate this position to help legalize their business methods, but Plaintiffs (and hundreds, if not thousands, of people like them) not want and expect to receive Vallas' Political Text Messages.

65.     The P2P Alliance Petition is a curious filing because it strongly suggest that "peer-to-peer" messaging is being viewed by some politicians as a way to avoid and/or circumvent the TCPA which prohibits the transmission of unsolicited text messages en masse.

66. Additionally, another principal factual issue is whether the Defendants obtained the cellular telephone numbers in question en masse from a database.

67. These common questions of law and fact predominate over any individualized issues.

68. Plaintiffs' claims are typical of the class members, because their claims are based upon the same facts and legal theories.

69. Plaintiffs will fairly and adequately protect the interests of the Class Members defined above.

70. Plaintiffs and their proposed class counsel have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions.

71. Plaintiffs do not have any interest that might cause them not to vigorously pursue this civil action to certification, trial and/or settlement on a classwide basis.

72. Proposed class counsel will zealously prosecute this civil action.

73. Class Members can be readily ascertained from Defendant's records and commercially available databases.

74. This civil action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation.

75. The proposed Class defined above is so numerous that joinder of all members would be impractical. On information and belief, more than forty and at least several hundred persons with Illinois area codes were sent the subject text messages.

76. As alleged above, common questions of law and fact exist as to all members of the Plaintiff Class and those questions predominate over any questions or issues involving only individual class members. To recap, as set forth above, the principal issue is whether the Defendants transmitted the Political Text Messages by typing the

telephone numbers of each Class Member of whether Defendants used a form of ATDS (hereafter "automated delivery system") and whether Defendants' conduct violates 47 U.S.C. §§ 227 *et seq.*

77.     On information and belief, the automated delivery system used by Defendants to transmit the Political Text Messages for Vallas has the capacity to automatically transmit hundreds of the Political Text Messages at the same time.

78.     On information and belief, the automated delivery system used by Defendants to transmit the Political Text Messages for Vallas has the capacity to automatically transmit hundreds of the Political Text Messages at the same time without any meaningful human intervention.

79.     On information and belief, the automated delivery system used by Defendants to transmit the Political Text Messages for Vallas has the capacity to automatically transmit hundreds of the Political Text Messages at the same time in a random or sequential manner to cellular telephone numbers that are stored and/or generated by Defendant's automated system.

80.     On information and belief, the automated delivery system used by Defendants to transmit the Political Text Messages for Vallas has the capacity to automatically transmit hundreds of the Political Text Messages at the same time to cellular telephone numbers that are stored and/or generated by Defendant's automated system.

81.     On information and belief, the automated delivery system used by Defendants to transmit the Political Text Messages for Vallas has the capacity to automatically transmit hundreds of the Political Text Messages at the same time to randomly or sequentially generated cellular telephone numbers that are stored and/or otherwise generated by Defendant's automated system.

82.     "[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). The *American Blastfax* standard has been adopted across the country, including by other judges in this district. *See Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 U.S. Dist. LEXIS 16866, 2014 WL 540250, at *17 (N.D. Ill. Feb. 11, 2014) (finding "ample precedent" for holding individual officers liable for violations).

83.     On information and belief, Paul Vallas, and other currently unknown campaign workers may have had direct, personal participation in and/or personally authorized the complained of conduct.  Therefore in theory, they could be held liable for the above described violations of the TCPA.[2]

### COUNT I – NEGLIGENT VIOLATIONS OF THE TCPA VERSUS VALLAS

84.     Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

85.     On information and belief, Vallas had direct, personal participation in or personally authorized the complained of conduct.

86.     The Political Text Messages sent by or authorized by Vallas to Plaintiffs were regarding political campaign activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

87.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Vallas is liable to Plaintiffs for at least $500.00 per text message.

---

[2] This First Amended Complaint will be amended should discovery support this contention.

88.     Moreover, Vallas' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiffs are otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Defendant Vallas:

a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

b. Award Plaintiffs and each Class Member statutory damages of $500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

c. Enjoining Vallas from further violations of the TCPA; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – WILLFUL AND WANTON VIOLATIONS VERSUS VALLAS

89.     Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

90.     As set forth above, Vallas violated the TCPA.

91.     Pursuant to 47 U.S.C. § 227(b)(3)(C), Vallas is liable to Plaintiffs and the putative Class Members for up to $1,500.00 per unlawful text message.

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Vallas:

a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

b. Award Plaintiffs and each Class Member statutory damages of $1,500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(C);

c. Enjoining Defendant from further violations of the TCPA; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT III – NEGLIGENT VIOLATIONS OF THE TCPA VERSUS LINK2TEK**

92.     Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

93.     On information and belief, Link2Tek transmitted the Political Text Messages.

94.     The Political Text Messages sent by Link2Tek to Plaintiffs were regarding political campaign activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

95.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Link2Tek is liable to Plaintiffs for at least $500.00 per text message.

96.     Moreover, Link2Tek's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiffs are otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Defendant Link2Tek:

a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

b. Award Plaintiffs and each Class Member statutory damages of $500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

c. Enjoining Link2Tek from further violations of the TCPA; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – WILLFUL AND WANTON VIOLATIONS VERSUS LINK2TEK

97. Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

98. As set forth above, Link2Tek violated the TCPA.

99. Pursuant to 47 U.S.C. § 227(b)(3)(C), Link2Tek is liable to Plaintiffs and the putative Class Members for up to $1,500.00 per unlawful text message.

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Link2Tek:

a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

b. Award Plaintiffs and each Class Member statutory damages of $1,500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(C);

c. Enjoining Link2Tek from further violations of the TCPA; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT V – NEGLIGENT VIOLATIONS OF THE TCPA VERSUS LAM

100. Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

101. Here, on information and belief, Ms. Lam had direct, personal participation in or personally authorized the complained of conduct.

102.    The Political Text Messages sent or authorized by Lam to Plaintiffs were regarding political campaign activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

103.    Pursuant to 47 U.S.C. § 227(b)(3)(B), Lam is liable to Plaintiffs for at least $500.00 per text message.

104.    Moreover, Lam's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiffs are otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Defendant Lam:

a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

b. Award Plaintiffs and each Class Member statutory damages of $500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

c. Enjoining Lam from further violations of the TCPA; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT VI – WILLFUL AND WANTON VIOLATIONS OF VERSUS LAM**

105.    Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

106.    As set forth above, Lam violated the TCPA.

107.    Pursuant to 47 U.S.C. § 227(b)(3)(C), Lam is liable to Plaintiffs and the putative Class Members for up to $1,500.00 per unlawful text message.

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Lam:

    a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

    b. Award Plaintiffs and each Class Member statutory damages of $1,500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(C);

    c. Enjoining Lam from further violations of the TCPA; and

    d. Awarding any other relief as this Honorable Court deems just and appropriate.

***Plaintiffs demand a jury trial***

January 22, 2019

By: /s/ James C. Vlahakis

James C. Vlahakis
Sulaiman Law Group, Ltd
2500 S. Highland Ave., Suite 200 Lombard,
IL 60148
(630) 581-5456
jvlahakis@sulaimanlaw.com

Counsel for Plaintiffs and the proposed class