**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| JEFF KLUEH and JAKE CAMPBELL, individually and on behalf of all other similarly situated Illinois residents, | Case No. 1:19-cv-00249 |
| Plaintiffs, v. | Honorable Andrea R. Wood |
| PAUL VALLAS FOR ALL CHICAGO and LINK2TEK, LLC | |
| Defendants | |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiffs JEFF KLUEH and JAKE CAMPBELL (at time "Plaintiffs"), by and through their attorney James C. Vlahakis of Sulaiman Law Group, Ltd, bring this Class Second Amended Action Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure in their individual capacities and on behalf of a class of all other similarly situated persons who received automated text messages promoting City of Chicago mayoral candidate Paul Vallas, without their consent, and in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*

**II. JURISDICTION, PARTIES AND VENUE**

1.  This civil action arises under and is brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq*.

2.  Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337, as this civil action arises from a violation of a federal statute, 47 U.S.C. § 227.

3.  Plaintiff JEFF KLUEH ("Klueh") is a natural person residing in Chicago, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

4.  Plaintiff JAKE CAMPBELL ("Campbell") is a natural person residing in Chicago, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

1

5.     Defendant PAUL VALLAS FOR ALL CHICAGO ("Vallas" or "Defendant") is a "person" as defined by 47 U.S.C. § 153(39) and is headquartered in Chicago, Illinois.

6.     Vallas acted through its agents, employees, officers, members, volunteers, staffers, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

7.     Defendant LINK2TEK, LLC ("Link2Tek") is Delaware corporation.

8.     Link2Tek is registered with Secretary of State of North Carolina.

9.     On information and belief, Link2Tek's business address is 725 Merrimon Avenue #8414, Asheville, North Carolina, 28814.  Alternatively, Link2Tek's business address is 117 Flint Street #1, Asheville, North Carolina, 28801-2217.

10.     According to the Delaware Department of State, Division of Corporations, Link2Tek's registered agent is Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

11.     According to the North Carolina Secretary of State, Link2Tek's registered agent is MWB Corporate Services, LLC, 48 Patton Avenue, Asheville, North Carolina, 28801-3321.

12.     As detailed below, Vallas entered into an agreement with Link2Tek whereby Link2Tek provided Vallas with technology that provided Vallas with the ability to transmit and/initiate thousands of unsolicited text messages to persons through the use of random or/and sequentially generated cellular telephone numbers.

13.     As detailed below, Vallas used Link2Tek and Lam to send thousands of *unsolicited* campaign text messages persons identified as living in the Chicagoland area ("Class Members") despite not having the express consent of the Class Members.

14.     According to the Delaware Department of State, Division of Corporations, ATH's registered agent is Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Plaintiffs reside in this District, Vallas is headquartered in this District and conducts substantial business in this District, and all of the conduct giving rise to the claims occurred within this District.

### III.   BACKGROUND ALLEGATIONS

#### A. Summary of the TCPA

16.     Section 227(b)(1)(iii) of the TCPA states that "[i]t shall be unlawful for any person within the United States . . . (A) to make any call (other than a call made for emergency purposes or make with the prior express consent of the called party) using an automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . ."

17.     227(a)(1) of the TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

18.     A text messages is considered a "call" subject to the protections afforded by the TCPA. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1009 (N.D. Ill. 2010). *See also, Campbell-Ewald Co. v. Gomez*, 136 S.Ct.663, 667 (2016) ("A text message . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Blow v. Bijora, Inc.*, 798 F.3d 793, 798 (7th Cir. 2017)("It is uncontested that text messages to a cellular phone constitute 'calls' within the purview of § 227(b)(1)(A)(iii)."); *In Re Rules & Regs Implementing the TCPA*, 18 F.C.C.R. 14014, 14115 ¶ 165 (2003) (confirming that § 227(b)(1)'s prohibition against autodialing "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls").

19.     The Seventh Circuit has held that the Federal Trade Commission has "adopted" an "expansive definition of an autodialer", holding that that text messages

3

transmitted with some form of human intervention fall under the purview of the TCPA.

*Blow,* 798 F.3d at 802.

20.    The "phrase 'using a random or sequential number generator' applies to the numbers to be called and an ATDS must either store or produce those numbers (and then dial them). *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018).

21.    The Ninth Circuit Court of Appeals in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) analyzed and rejected the defendant's argument that its text messages did not violate the TCPA because the messages were not sent to randomly or sequentially generated telephone numbers:  "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically."  *Id.* at 1052.

22.    *Marks* rejected the argument that the text messages did not violate the TCPA because humans were involved in the transmission of the messages:

> We also reject Crunch's argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever. By referring to the relevant device as an "*automatic* telephone *dialing* system," Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated without any human oversight or control. Common sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions. Congress was clearly aware that, at the very least, a human has to flip the switch on an ATDS. Crunch does not dispute that the Textmunication system dials numbers automatically, and therefore it has the automatic dialing function necessary to qualify as an ATDS, even though humans, rather than machines, are needed to add phone numbers to the Textmunication platform.

*Id.* at 1052-53 (citations omitted).

**B. The Federal Communications Commission Enforcement Advisory Relative to Political Campaigns**

23.     On March 14, 2016, the Federal Communications Commission ("FCC") issued an Enforcement Advisory entitled "BIENNIAL REMINDER FOR POLITICAL CAMPAIGNS ABOUT ROBOCALL AND TEXT ABUSE" ("Advisor"). In part, the Advisory asks and answers the following question:

**Does the same prohibition against making autodialed calls to cell phones apply to sending autodialed text messages to cell phones?**

Yes. The Commission has determined that the prohibition against placing autodialed calls to cell phones without prior express consent "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to [a wireless] service."[FN] Accordingly, only manually placed text messages are permissible without prior express consent.

https://docs.fcc.gov/public/attachments/DA-16-264A1.pdf

24.     The FCC's website also contains the following content regarding "Political Campaign Robocalls & Robotexts:



https://www.fcc.gov/political-campaign-robocalls-robotexts

25.    In relevant part, the FCC's Political Campaign Robocalls & Robotexts posting states:

Political campaign-related <u>autodialed</u> or <u>prerecorded voice</u> calls (including autodialed live calls, prerecorded voice messages, and text messages) are:

- Not allowed to cell phones, pagers, or other mobile devices without the called party's prior express consent.
- Not allowed to protected phone lines such as emergency or toll-free lines, or lines serving hospitals or similar facilities, unless made with the called party's prior express consent.
- Allowed when made to landline telephones, even *without* prior express consent.

Robotexts are text messages generated through autodialing. Under the TCPA, these are considered a type of call and fall under all the robocall rules.  As text messages generally go to mobile phones, they require the called party's prior express consent if they are generated using autodialing.

https://www.fcc.gov/political-campaign-robocalls-robotexts

### C. Link2Tek's Representations

26.    Link2Tek purports to engage in so-called "peer-to-peer" texting, but in reality, Link2Tek's operating system is nothing more than an ATDS dressed in sheep's clothing.

27.    As described below, Link2Tek's operating system allowed Vallas to auto-fill phone numbers obtained by and through Link2Tek's use of random and/or sequential number generators.

28.    Link2Tek's website contains and "Education" page which describes how it can randomly and/or sequentially obtain telephone numbers:

**1) We match more mobile phone numbers to targeted voters than any other firm**, including even the biggest GOP data firms controlled by the Koch brothers and the RNC. Remember, you can't drive turnout if you don't have the number. Because the data we access is updated every 15 minutes by the major carriers, we can deliver messages to voters that the Internet-based P2P providers cannot. Our data comes directly from the telecoms.

https://www.link2tek.com/education/p2p-plus-vs-p2p-only

29.    Link2Tek's website contains a "Legal Compliance" page which is depicted by the below screen capture:



Compliance - Google Chrome

🔒 https://www.link2tek.com/legal-compliance

| Home | Technology | Education | Team | Pricing | Contact | Terms | Privacy |

Email Us | Text Us at (202) 670-5640

## Legal Compliance

**Fully Compliant with Federal Law**

Link2Tek's P2P-PLUS technology is fully compliant with federal law and is supported by a detailed legal analysis and Opinion from the highly-respected telecommunications practice of the national law firm *Arent Fox*. Like platforms in the P2P Alliance, the Link2Tek system requires human intervention and is not capable of becoming an autodialer. The P2P Alliance Legal Analysis states:

*"P2P messages cannot be sent without human intervention, and any P2P message, whether containing a script or a uniquely tailored message, requires an affirmative human action. By ensuring that each message is individually sent to a single recipient, P2P texting facilitates the types of conversations the FCC has sought to permit, rather than restrict, in its implementation of the Telephone Consumer Protection Act (47 U.S.C. § 227)."*

*"P2P text messaging does not involve the use of equipment that constitutes an automatic telephone dialing system ("autodialer") as such term is defined by the TCPA, nor are P2P messages made using an autodialer."*

These positions have been affirmed by recent federal appeals and district level rulings.

https://www.link2tek.com/legal-compliance

30. Link2Tek's "legal compliance" webpage includes the following quote:

> P2P messages cannot be sent without human intervention, and any P2P message, whether containing a script or a uniquely tailored message, requires an affirmative human action. By ensuring that each message is individually sent to a single recipient, P2P texting facilitates the types of conversations the FCC has sought to permit, rather than restrict, in its implementation of the Telephone Consumer Protection Act ("TCPA").

*Id.*

31. The above quotation was taken from a "Petition for Clarification of The P2P Alliance" ("P2P Alliance Petition") that is pending before the FCC as of April 23, 2019, on behalf of "P2P Alliance."

32. According to the Petition, "P2P Alliance is a coalition of providers and users of P2P texting services."

33. The P2P Alliance Petition can be found hosted at https://ecfsapi.fcc.gov/file/10503899411027/P2P%20Petition%20-%20FINAL.pdf

34. Link2Tek's reliance on the P2P Alliance Petition is self-serving.

## IV.  THE POLITICAL TEXT MESSAGE CAMPAIGN

35. Vallas (with the technical assistance of Link2Tek) sent unsolicited text messages to Plaintiffs and thousands of other persons (the "Political Text Messages") Vallas Political Text Messages to Plaintiffs' cellular telephones where the text messages promoted Paul Vallas for mayor of the City of Chicago in the run up to the 2019 mayoral election.

36. Alternatively, Link2Tek (at the direction, consent and knowledge of Vallas) sent Political Text Messages Plaintiffs' cellular telephones where the text messages promoted Paul Vallas for mayor of the City of Chicago in the run up to the 2019 mayoral election.

37. Vallas (with the technical assistance of Link2Tek) sent thousands of unsolicited and generic Political Text Messages to the cellular telephones of putative class members where the Political Text Messages promoted Paul Vallas for mayor of the City of Chicago in the run up to the 2019 mayoral election.

38. Alternatively, Link2Tek (at the direction, consent and knowledge of Vallas) sent thousands of unsolicited and generic Political Text Messages to the cellular telephones of putative class members where the text messages promoted Paul Vallas for mayor of the City of Chicago in the run up to the 2019 mayoral election.

39. Link2Tek violated § 227(b)(1)(iii) of the TCPA by sending Political Text Messages where the Political Text Messages were sent as a result of Link2Tek using software to generate, store and or dial random cellular telephone numbers.

40. Vallas violated § 227(b)(1)(iii) of the TCPA by sending Political Text Messages to Plaintiffs and thousands of other persons where the Political Text Messages

were sent as a result of Vallas utilizing Link2Tek's software to generate, store and or dial random cellular telephone numbers.

41.   Alternatively, Link2Tek violated § 227(b)(1)(iii) of the TCPA by sending Political Text Messages to Plaintiffs and thousands of other persons where the Political Text Messages were sent as a result of Link2Tek using software to create a random sample of cellular telephone numbers from a list of persons obtained from a third-party.

42.   Alternatively, Vallas violated § 227(b)(1)(iii) of the TCPA by sending Political Text Messages to Plaintiffs and thousands of other persons where the Political Text Messages were sent as a result of Vallas using Link2Tek's software to create a random sample of n cellular telephone numbers from a list of persons obtained from a third-party.

43.   The software utilized by Link2Tek and Vallas stored the subject cellular telephone numbers during Vallas' campaign for mayor and sent one or more unsolicited Political Text Messages to Plaintiffs and thousands of other persons

44.   On information and belief, Link2Tek and/or Vallas obtained a database and random samples of potential voters from Aristotle International, Inc.

45.   On information and belief, the telephone numbers obtained from Aristotle International, Inc. is outdated because it was not updated to only include registered voters who lived in the City of Chicago.

46.   Vallas and Link2Tek violated the Section 227(b)(1)(iii) of the TCPA by sending unsolicited and generic Political Text Messages to Plaintiffs' cellular telephones and thousands of cellular phones of other persons.

47.   The Political Text Messages were sent to Plaintiffs and thousands of other putative class members were generic in nature.

48.   None of the Political Text Messages mentioned either Plaintiff by name.

49.   The Political Text Messages were sent to Plaintiffs and thousands of other putative class members were not individualized in any manner.

9

50.     December 5, 2018, Plaintiff Klueh received the below Political Text Message on his cellular telephone number, (773)xxx-9413:



51.     Klueh did not consent to receive the above Political Text Message.

52.     Klueh did not sign any type of documents that authorized the transmission of the above Political Text Message to his cellular telephone number.

53.     Defendants used a "long code" to make it appear as if the above Political Text Messages came from 10-digit phone number.

54.     Defendants used a similarly "long code" to send Political Text Messages to putative class members.

55.     Defendants used a "long code" 10-digit phone number for the purpose of deceiving Plaintiff and putative class members like him into believing that the Political Text

Messages were being sent by a cellular telephone number operated by an individual, when in reality the Political Text Messages were being sent en masse by computerized software.

56.     On December 20, 2018, Klueh received the below Political Text Message on his cellular telephone number:



57.     Klueh did not consent to receive the above Political Text Message.

58.     Klueh did not sign any type of or electronic documents that authorized the transmission of the above Political Text Message to his cellular telephone number.

59.     The above Political Text Message was sent to Klueh's cellular telephone via a device or software that qualifies as an ATDS as defined by the TCPA and as interpreted by the above cited court cases.

60.     On January 2, 2019, Plaintiff Campbell received the below Political Text Message on his cellular telephone number, (630)xxx-6131:





61.    Campbell did not consent to receive the above Political Text Message.

62.    Campbell did not sign any document that authorized the transmission of the above Political Text Message to his cellular telephone number.

63.    None of the Political Text Messages that Vallas and/or Link2Tek sent to Plaintiffs contained the word "STOP" which could have allowed Plaintiffs to opt of future Political Text Messages.

64.     On information and belief, Vallas and/or Link2Tek purchased or otherwise acquired Plaintiffs' cellular numbers from a database of randomly and/or sequentially generated telephone numbers.

65.     Vallas and Link2Tek knew Plaintiffs' phone numbers were cellular telephone phone numbers before the Political Text Messages were sent to Plaintiffs' phone numbers.

66.     Defendants never had permission to text the Political Text Messages to Plaintiffs' cellular telephones.

67.     As described above, Vallas used an ATDS to send the same or similar Political Text Messages to thousands of Illinois based cellular telephone numbers.

68.     Alternatively, as described above, Link2Tek used an ATDS to send the same or similar Political Text Messages to thousands of Illinois based cellular telephone numbers.

69.     As a result of Defendant Vallas and/or Defendant Link2Tek's unlawful transmission of unsolicited Political Text Messages, over four thousand complaints were filed with at least one third-party organization.

70.     Further, based upon the volume of complaints sent to one or more third-parties where persons complained about receiving text messages sent by or on behalf of Vallas the automated delivery system that was used to transmit the Political Text Messages for Vallas had the capacity to automatically transmit hundreds of the Political Text Messages at the same time without any meaningful human intervention – by and through software that randomly generated samples of intended recipients of the Political Text Messages.

71.     On information and belief, the automated delivery system used by Defendants to transmit the Political Text Messages for Vallas has the capacity to automatically transmit hundreds of the Political Text Messages at the same time to cellular telephone numbers that are stored by Link2Tek's operating system.

13

72.     On information and belief, the automated delivery system used by Defendants to transmit the Political Text Messages for Vallas has the capacity to automatically transmit hundreds of the Political Text Messages at the same time to randomly generated cellular telephone numbers that are stored and/or otherwise generated by Link2Tek's operating system.

73.     Vallas issued a press release that claimed that "[o]ur communications platform has been thoroughly vetted legally and is legal under FCC guidelines."

74.     The press release did not refer to any so-called "FCC guidelines."

75.     The press release claimed that "[o]ur vendors follow all rules and regulations" but the press release did not specifically refer to any rules or regulations.

76.     Chris Kelly, who on information and belief was Vallas' Campaign Manager and/or a member of Vallas' campaign staff, Tweeted that he was "pulling something together" in relation to alleged text messages being sent by a rival candidate:



https://twitter.com/Katcheck96/status/1085584412870348811

77.    Vallas' Illinois Sunshine disclosures identify that Vallas paid Link2Tek $100,000 on or about October 29, 2018.

78.    This payment is reflected by the below screen capture:



79.    Vallas' Illinois Sunshine disclosures identify that Vallas paid Link2Tek $200,000 on or about July 20, 2018.

80.    This payment is reflected by the below screen capture:



81.     Vallas' Illinois Sunshine disclosures identify that Vallas paid Link2Tek $50,000 on or about January 25, 2019.

82.     This payment is reflected by the below screen capture:



83.     On information and belief, Juliana Lam, and other currently unknown campaign Vallas workers may have had direct, personal participation in and/or personally authorized the complained of conduct.  In theory, they could be held liable for the above described violations of the TCPA.[1]

### COUNT I – NEGLIGENT VIOLATIONS OF THE TCPA VERSUS VALLAS

84.     Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

85.     On information and belief, Vallas had direct, personal participation in or personally authorized the complained of conduct.

86.     The Political Text Messages sent by or authorized by Vallas to Plaintiffs were regarding political campaign activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

---

[1] The Second Amended Complaint will be amended should discovery support this contention.

87.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Vallas is liable to Plaintiffs for at least $500.00 per call.

88.     Moreover, Vallas' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiffs and putative class members are otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Defendant Vallas:

   a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

   b. Award Plaintiffs and each Class Member statutory damages of $500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

   c. Enjoining Vallas from further violations of the TCPA; and

   d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – WILLFUL AND WANTON VIOLATIONS VERSUS VALLAS

89.     Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

90.     As set forth above, Vallas violated the TCPA.

91.     Pursuant to 47 U.S.C. § 227(b)(3)(C), Vallas is liable to Plaintiffs and the putative Class Members for up to $1,500.00 per unlawful text message.

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Vallas:

   a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

17

b. Award Plaintiffs and each Class Member statutory damages of $1,500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(C);

c. Enjoining Defendant from further violations of the TCPA; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – NEGLIGENT VIOLATIONS OF THE TCPA VERSUS LINK2TEK

92. Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

93. On information and belief, Link2Tek transmitted the Political Text Messages.

94. The Political Text Messages sent by Link2Tek to Plaintiffs were regarding political campaign activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

95. Pursuant to 47 U.S.C. § 227(b)(3)(B), Link2Tek is liable to Plaintiffs for at least $500.00 per call.

96. Moreover, Link2Tek's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiffs and putative class members are otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Defendant Link2Tek:

a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

b. Award Plaintiffs and each Class Member statutory damages of $500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

c. Enjoining Link2Tek from further violations of the TCPA; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

18

**COUNT IV – WILLFUL AND WANTON VIOLATIONS VERSUS LINK2TEK**

97.     Plaintiffs JEFF KLUEH and JAKE CAMPBELL reallege and incorporate by reference the above paragraphs as though fully set forth herein.

98.     As set forth above, Link2Tek violated the TCPA.

99.     Pursuant to 47 U.S.C. § 227(b)(3)(C), Link2Tek is liable to Plaintiffs and the putative Class Members for up to $1,500.00 per unlawful text message.

**WHEREFORE**, Plaintiffs JEFF KLUEH and JAKE CAMPBELL individually and on behalf of all others similarly situated, seek judgment against Link2Tek:

   a. Declaring that this action is properly maintained as a Class Action and certifying Plaintiffs as Class representative, and appointing attorney James C. Vlahakis as Class Counsel;

   b. Award Plaintiffs and each Class Member statutory damages of $1,500.00 per unlawful text message pursuant to 47 U.S.C. §§ 227(b)(3)(C);

   c. Enjoining Link2Tek from further violations of the TCPA; and

   d. Awarding any other relief as this Honorable Court deems just and appropriate.

## V.   CLASS ACTION BASED ALLEGATIONS

100.   Plaintiffs bring this civil action on behalf of themselves and putative class members pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

101.   As related to each separate Count identified above, the Classes consists of:

   a. all persons who were sent unsolicited Political Text Messages on behalf of Vallas;

   b. where the Political Text Messages were transmitted to cellular telephone numbers that were identified as cellular numbers by at the time the Political Text Messages were transmitted;

   c. where the Political Text Messages were sent as a result of the use of a random number generator;

       d. where Vallas and/or Link2Tek did not have the express permission of the persons who were sent the Political Text Messages; and

       e. the Political Text Messages were transmitted to Illinois based area codes.

102. There are questions of law and fact common to Plaintiffs and the Class Members that they seek to represent.

103. The principal legal and factual issues are whether Defendants violated 227(b)(1)(iii) of the TCPA by: (a) sending the subject Political Text Messages to cellular telephone numbers with Illinois area codes; (b) without the consent of Plaintiffs and putative class members; and (c) where the subject telephone numbers were randomly generated by software utilized by Defendants.

104. These common questions of law and fact predominate over any individualized issues.

105. Plaintiffs' claims are typical of the class members, because their claims are based upon the same facts and legal theories.

106. Plaintiffs will fairly and adequately protect the interests of the Class Members defined above.

107. Plaintiffs and their proposed class counsel have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions.

108. Plaintiffs do not have any interest that might cause them not to vigorously pursue this civil action to certification, trial and/or settlement on a classwide basis.

109. Proposed class counsel will zealously prosecute this civil action.

110. Class Members can be readily ascertained from Defendant's records and commercially available databases.

111. This civil action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation.

112.   The proposed Class defined above is so numerous that joinder of all members would be impractical.  On information and belief, more than forty and at least several hundred persons with Illinois area codes were sent the subject text messages.

113.   As alleged above, common questions of law and fact exist as to all members of the Plaintiff Class and those questions predominate over any questions or issues involving only individual class members.

***Plaintiffs demand a jury trial***

By: _/s/ James C. Vlahakis_

James C. Vlahakis
Sulaiman Law Group, Ltd
2500 S. Highland Ave., Suite 200
Lombard, IL 60148
(630) 581-5456
jvlahakis@sulaimanlaw.com

Counsel for Plaintiffs and the proposed class

**CERTIFICATE OF SERVICE**

I, James C. Vlahakis, an attorney, certify that I caused the above document to be served upon all persons and entities registered and authorized to receive such service through the court Case Management / Electronic Case Files (CM/ECF) system on May 2, 2019.

By: /s/ James C. Vlahakis