# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **JEFF KLUEH** and **JAKE CAMPBELL,** individually, and on behalf of all other similarly situated Illinois residents, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 1:19-cv-00249 |
| **PAUL VALLAS FOR ALL CHICAGO**, and **LINK2TEK, LLC**. | ) ) ) | Judge Andrea R. Wood Magistrate Judge Susan E. Cox |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS

**TABLE OF CONTENTS**

**Introduction** ............................................................................................................................. 1

**Relevant Allegations** ............................................................................................................. 2

**Legal Standard** ...................................................................................................................... 3

**Argument** ............................................................................................................................... 3

    **I.    Plaintiffs' Conclusory Allegations Regarding The Use Of An ATDS Are Insufficient To State A Claim And Are Ultimately Self-Defeating** ........................................................... 4

        A.    The Changed TCPA Landscape .................................................................................. 4

        B.    Plaintiffs' Own Allegations Can Only Lead To The Conclusion That The Link2Tek Platform Is *Not* An Autodialer ............................................................................... 6

        C.    Allegations That Supported The Vacated ATDS Standard Do Not Plausibly Support The Statutory Standard .......................................................................................... 8

    **II.   Messaging Platform Providers Cannot Be Liable For Transmitting Their Customers' Messages** ............................................................................................................................... 10

**Conclusion** ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Int'l v. FCC*,
   885 F.3d 687 (D.C. Cir. 2018) ............................................................................................ 1, 4, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 3

*Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*,
   584 F. Supp. 2d 736 (D. Md. 2008) ........................................................................................ 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 3

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
   606 F.3d 443 (7th Cir. 2010) ................................................................................................. 11

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) ............................................................................................................. 13

*City Select Auto Sales Inc. v. David Randall Assocs., Inc.*,
   885 F.3d 154 (3rd Cir. 2018) ................................................................................................ 13

*Clark v. Avatar Techs. PHL, Inc.*,
   Civil Action No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014) ............................ 13

*Dominguez v. Yahoo, Inc.*,
   894 F.3d 116 (3rd Cir. 2018) .................................................................................................. 6

*Ewing v. Encor Solar, LLC*,
   Case No. 18-cv-2247-CAB-MDD, 2019 WL 277386 (S.D. Cal. Jan. 22, 2019) .................. 10

*Fleming v. Associated Credit Servs., Inc.*,
   342 F. Supp. 3d 563 (D.N.J. 2018) ......................................................................................... 6

*Garcia v. Seterus, Inc.*,
   No. CV F 12-2049 LJO SAB, 2013 WL 1281565 (E.D. Cal. Mar. 27, 2013) ...................... 10

*Hanley v. Green Tree Servicing, LLC*,
   934 F. Supp. 2d 977 (N.D. Ill. 2013) ...................................................................................... 3

*Izsak v. Draftkings, Inc.*,
   191 F. Supp. 3d 900 (N.D. Ill. 2016) .................................................................................. 3, 4

*Johnson v. Yahoo!, Inc.*,
   346 F. Supp. 3d 1159 (N.D. Ill. 2018) ...........................................................................1, 4, 5, 7

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) .............................................................................................1, 8

*Payton v. Kale Realty, LLC*,
   164 F. Supp. 3d 1050 (N.D. Ill. 2016) .....................................................................................1

*Pinkus v. Sirius XM Radio, Inc.*,
   319 F. Supp. 3d 927 (N.D. Ill. 2018) ...................................................................................4, 5

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
   No. C13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) .......................................1

*Roark v. Credit One Bank, N.A.*,
   Civ. No. 16-173, 2018 WL 5921652 (D. Minn. Nov. 13, 2018) ..............................................8

**Statutes**

47 U.S.C. § 227(a)(1)(A) ................................................................................................................4

47 U.S.C. § 227(b)(1)(A) ..........................................................................................................4, 11

**Other Authorities**

47 C.F.R. § 64.1200(a)(1)(iii) ..................................................................................................1, 11

S. Rep. No. 102-178, § 2 (1991) ...................................................................................................11

**Introduction**

Plaintiffs' Second Amended Class Action Complaint ("SAC") still rests on the same two false premises as their First Amended Complaint: (1) that Illinois is located in the Ninth Circuit and (2) that the Telephone Consumer Protection Act ("TCPA") regulates the *transmission* of allegedly unsolicited text messages in any way.

As to the first issue, Plaintiffs' continued reliance on the Ninth Circuit's *Marks v. Crunch* decision is ultimately self-defeating. SAC, ¶¶ 21-22. What Plaintiffs are signaling is that they would similarly need this Court to rewrite an unambiguous law to sweep in text messaging platforms that the plain language of the TCPA does not consider autodialers. Just as Judges Shah, Feinerman, Lee and Chang from this District have separately ruled in the wake of the D.C. Circuit's *ACA* decision,[1] the Court should likewise hold that a "device that stores or produces numbers without any use of a random or sequential number generator is a different device."[2]

Second, the TCPA prohibits the *initiation* of certain messages made without the requisite consent from the message recipient.[3] Plaintiffs continue to conflate message *initiation* with message *transmission*. Because they are seeking to hold Link2Tek liable for transmitting its customer's text messages, which is not actionable under the TCPA, Plaintiffs have failed to state a valid claim against Link2Tek for this independent reason.

---

[1] *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).
[2] *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018). The terms "autodialer," "Automatic Telephone Dialing System," or "ATDS" are used interchangeably below.
[3] *See* 47 C.F.R. § 64.1200(a)(1)(iii) (making it unlawful to "*initiate* any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipient's prior express consent) (emphasis added); *see also Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1058 (N.D. Ill. 2016) (ruling that Plaintiff's conflation of message *initiation* and message *transmission* would improperly "impose TCPA liability on any carrier in the call flow that simply transmits the message, with no logical cut off."); *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 WL 778065, at *8 (W.D. Wash. Feb. 24, 2015) (same).

**Relevant Allegations**

Plaintiff Klueh alleges that he received two, and Plaintiff Campbell alleges that he received one, unsolicited text message from the Vallas for All Chicago campaign.[4] SAC, ¶¶ 50, 56, 60. Consistent with their First Amended Complaint (FAC, ¶ 41), Plaintiffs allege that their telephone numbers were acquired "from a list of persons obtained from a third-party." SAC, ¶¶ 41, 44-45. In fact, they allege that Defendants "knew Plaintiffs' phone numbers were cellular telephone numbers before" the text messages at issue were transmitted. *Id.*, ¶ 65. Despite Plaintiffs conceding that their telephone numbers were acquired from a curated list of "potential voters" meant "to only include registered voters who lived in the City of Chicago," (*id.*, ¶¶ 44-45), Plaintiffs nevertheless assert that the Link2Tek platform "can randomly and/or sequentially obtain telephone numbers." *Id.*, ¶ 28. This is because, according to Plaintiffs, the Link2Tek platform allows customers to "match … mobile phone numbers to targeted voters." *Id*. For the time being, Plaintiffs have chosen not to highlight their belief that the "principal issue is whether the Defendants transmitted the Political Text Messages by typing the telephone numbers of each Class Member of [*sic*] whether Defendants used a form of ATDS."). FAC, ¶ 76.

As for Link2Tek's involvement, or lack thereof, Plaintiffs assert that "Link2Tek provided Vallas with technology that provided Vallas with the ability to **transmit and/ initiate** thousands of unsolicited text messages … ." SAC, ¶ 12 (emphasis added). Plaintiffs further allege that Link2Tek is a text messaging platform doing business in North Carolina, but "all of the conduct giving rise to the claims occurred within this District." *Id.*, ¶¶ 9, 15. Plaintiffs seek to hold Link2Tek responsible because it "**transmitted** the Political Text Messages." *Id.*, ¶ 93 (emphasis added).

Based on these allegations, Plaintiffs bring four overlapping claims under the TCPA –

---

[4] Referred to herein as the "Vallas campaign" or "Vallas."

one against each Defendant based on negligent conduct, and one against each Defendant based on willful conduct – on behalf of a putative class.

## Legal Standard

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Moreover, when considering a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013) (dismissing TCPA complaint when plaintiff "merely states what he understands the TCPA to proscribe, and then goes on to plead threadbare and conclusory facts that allege the elements of a *prima facie* cause of action under the Act, but nothing more."). Indeed, as the Court has previously ruled, "where a fact – here, use of an ATDS – is itself an element of the claim, 'it is not sufficient to recite that fact verbatim without other supporting details.'" *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) (citation omitted).

## Argument

As demonstrated immediately below, what Plaintiffs understand the TCPA to proscribe is not what the TCPA *actually* proscribes under the law as it exists today. Plaintiffs have alleged that they were specifically targeted through the use of a curated list, and thus Plaintiffs have pled themselves out of court under the existing TCPA law of this District. The Link2Tek platform cannot be an autodialer under these facts.

3

Second, it has also never been the law that communications service providers like Link2Tek can be liable for transmitting their customers' messages. Only message initiation is actionable under the TCPA, and Plaintiffs simply do not allege any facts from which to infer Link2Tek did anything to violate the TCPA.

I.  **Plaintiffs' Conclusory Allegations Regarding The Use Of An ATDS Are Insufficient To State A Claim And Are Ultimately Self-Defeating**

A.  The Changed TCPA Landscape

An element of a TCPA claim is that the defendant made a call *using an ATDS. See* 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States . . . (A) to make any call . . . using any automatic telephone dialing system"). The TCPA defines an ATDS as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[5] Thus, if a text message is not sent via equipment that meets **this definition**, it falls outside of the TCPA. *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (Judge Feinerman grants motion for judgment on the pleadings because plaintiff's "complaint does not plausibly allege that he was called with a device that has the capacity to store or produce numbers that have been randomly or sequentially generated.").

To put it simply, the TCPA landscape has changed dramatically since the Court issued its ruling in *Izsak* nearly three years ago because the FCC's series of confusing and contradictory autodialer decisions have been vacated by the D.C. Circuit's *ACA* decision. As thoroughly detailed in Judge Feinerman's well-reasoned *Pinkus* decision, and as adopted by Judge Shah in *Johnson v. Yahoo!*, the *ACA* decision "necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS even if it does not have the capacity to generate phone numbers

---

[5] 47 U.S.C. § 227(a)(1)(A).

randomly or sequentially and then to dial them." *Pinkus*, 319 F. Supp. 3d at 935;[6] *see also Johnson*, 346 F. Supp. 3d at 1162 (Judge Shah reconsiders prior denial of Yahoo!'s motion for summary judgment because he was no longer bound by vacated FCC orders, and rules that under unambiguous language of TCPA, a "device that stores or produces numbers without any use of a random or sequential number generator" is not an ATDS).

The holdings in *Pinkus* and *Johnson* have more recently been adopted by Judge Lee in *Folkerts v. Seterus, Inc.*, CIV No. 17-C-4171, 2019 WL 1227790, at *6 (N.D. Ill. Mar. 15, 2019) ("equipment that merely has the ability to dial numbers from a stored list, as opposed to producing numbers using a random or sequential number generator, does not qualify as an ATDS"). And again by Judge Chang in *Gadelhak v. AT&T Servs.*, CIV No. 17-cv-01559, 2019 WL 1429346, at *4-7 (N.D. Ill. Mar. 29, 2019) (ruling that "predictive-dialing devices that lack the capacity to generate numbers either randomly or sequentially, and instead only dial numbers from a predetermined list," do not "meet the statutory definition of ATDS.").

In short, the judges in this District, and many courts across the country, have gone back to the basics: the actual statutory language of the TCPA. As Judge Shah ruled, the statutory definition of an autodialer is unambiguous and the "phrase 'using a random or sequential number generator' applies to the numbers to be called and an ATDS must either store or produce those numbers (and then dial them). **Curated lists developed without random or sequential number generation capacity fall outside the statute's scope.**" *Johnson*, 346 F. Supp. 3d at 1162 (emphasis added); *see also Pinkus*, 319 F. Supp. 3d at 938 ("the phrase 'using a random or

---

[6] As Plaintiffs' previous allegations made clear, there is nothing "predictive" about the Link2Tek text messaging platform at issue here. It requires substantial human intervention to allow political campaigns and their staffers and volunteers to engage supporters and potential voters on person-to-person, or peer-to-peer ("P2P") level at the time they choose to – not a computer. *See* FAC, ¶¶ 22-23, 26. Realizing that such allegations were fatal even **under the old standard**, Plaintiffs' Second Amended Complaint is a rather transparent attempt to hide the crux of this dispute: Plaintiffs' absurd belief that if a text messaging platform does not require its users to physically type out the individual recipients' telephone numbers before sending each message, then that system is an autodialer. FAC, ¶ 76 ("the principal issue is whether the Defendants transmitted the Political Text Messages by typing the telephone numbers of each Class Members . . . ."). That has never been the standard of what constitutes an autodialer.

5

sequential number generator' necessarily conveys that an ATDS must have the capacity to generate telephone [] numbers, either randomly or sequentially, and then to dial those numbers."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3rd Cir. 2018) (holding that a dialing system is only an autodialer if it can generate random or sequential numbers to dial); *Fleming v. Associated Credit Servs., Inc.*, 342 F. Supp. 3d 563, 576 (D.N.J. 2018) ("Does a system that dials numbers from a list that was not randomly or sequentially generated when the list was created qualify as an ATDS? With only the statutory text to guide me, **I am convinced the answer is no**.") (emphasis added); *Roark v. Credit One Bank, N.A.*, Civ. No. 16-173 (PAM/ECW), 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018) ("the correct inquiry is whether a device can generate numbers to dial either randomly or sequentially.").

      **B.**      **Plaintiffs' Own Allegations Can Only Lead To The Conclusion That The Link2Tek Platform Is *Not* An Autodialer**

Plaintiffs have not and cannot plead that the three text messages they allegedly received from the Vallas campaign were sent via an ATDS. In fact, their allegations can only support the inference that an ATDS was *not* used, and thus these messages cannot be actionable under the TCPA. This case is that simple.

Plaintiffs' only non-conclusory allegations regarding how their telephone numbers were acquired have not materially changed compared to their previous two complaints: Plaintiffs allege that their telephone numbers were acquired "from a list of persons obtained from a third-party." SAC, ¶¶ 41, 44-45. According to Plaintiffs, this curated list consisted of "potential voters" that was intended "to only include registered voters who lived in the City of Chicago." *Id.*, ¶¶ 44-45. In fact, they allege that Defendants "knew Plaintiffs' phone numbers were cellular telephone numbers before" the text messages at issue were transmitted. *Id.*, ¶ 65. In other words, there was **nothing random or sequential** about how Plaintiffs' telephone numbers were

6

selected, and **they were not even generated by the Link2Tek platform**. These are Plaintiffs' own allegations, and the *only* allegations about the origin of the numbers.

The only new allegations Plaintiffs introduce in an attempt to overcome their self-defeating concessions is the claim that the Link2Tek platform allows customers to "match … mobile phone numbers to targeted voters" from data supplied "by the major carriers." *Id.*, ¶ 28. This, according to Plaintiffs, supposedly establishes that the Link2Tek platform "can randomly and/or sequentially obtain telephone numbers." *Id.* But *obtaining* telephone numbers from another third party is not the same as the system *generating* telephone numbers. And *matching* telephone numbers is completely different than generating *random* or *sequential* telephone numbers. Stated differently, Plaintiffs are simply describing the ability of Link2Tek's platform to *validate* data from two different *third-party sources*, e.g., Wireless Carrier X's data is showing that the individual John Q. Smith in the Vallas campaign's contact list still has the same, active wireless number. That is, Link2Tek customers have the capability to compare two curated lists against each other, and these curated lists are admittedly obtained from third parties. Plaintiffs new allegations are thus just as self-defeating as their previous ones: there is no alleged number *generation* capacity in the Link2Tek platform, whether randomly, sequentially or otherwise.

Instead, Plaintiffs' theory of the case is still that there was **nothing random or sequential** about the telephone numbers selected, and they were **not even generated** by the Link2Tek platform. Thus, Plaintiffs have pled themselves out of Court because they are alleging that they were contacted using "[c]urated lists developed without random or sequential number generation capacity," which, as detailed above, "fall[s] outside the statute's scope." *Johnson*, 346 F. Supp. 3d at 1162. Again, this case is that simple. For this reason alone, Plaintiffs' Second Amended Complaint should be dismissed.

### C. Allegations That Supported The Vacated ATDS Standard Do Not Plausibly Support The Statutory Standard

Plaintiffs have already tipped their hand that this is not a defensible claim when they let it be known that their real belief is that "the principal issue is whether the Defendants transmitted the Political Text Messages by typing the telephone numbers of each Class Members . . . ."). FAC, ¶ 76. Plaintiffs' view of the TCPA would render anyone texting a family member, friend, or colleague from their stored contacts on a smartphone subject to the TCPA's autodialer prohibitions. This is *precisely* why the D.C. Circuit vacated the FCC's prior autodialer rulings. That is, if the FCC's rulings stood, "then nearly every phone on earth could be considered an autodialer." *Roark*, 2018 WL 5921652, at *2 (citing *ACA*, 885 F.3d at 697).

Indeed, Plaintiffs' continued reliance on the Ninth Circuit's *Marks v. Crunch*[7] decision already rejected by the judges of this District is a clear tell that even Plaintiffs do not believe that their case has merit *under the law of this District*. SAC, ¶¶ 21-22. Yet Plaintiffs apparently believe that if they attempt to temporarily hide their true intentions and conclusorily assert enough times that the Link2Tek platform can randomly and sequentially generate numbers – despite all specific allegations to the contrary – then they'll be able to get beyond the motion to dismiss phase and be able to impose even more litigation costs as leverage to extract an *in terrorem* settlement.

In fact, during Plaintiffs' counsel's most recent attempt to extort a settlement many multiples more than the statutory maximum damages for the three text messages at issue, he alerted undersigned counsel to the decision in *Hudson v. Ralph Lauren Corp.*, No. 18 C 4620, 2019 WL 1953106 (N.D. Ill. May 1, 2019), in which Judge Ellis denied a motion to dismiss in a TCPA case alleging that the plaintiff opted into Ralph Lauren's mobile alert program.

---

[7] *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

8

Link2Tek, however, respectfully submits that Judge Ellis evaluated the allegations under the incorrect standard, holding that the plaintiff's "allegations do not foreclose the use of an ATDS." *Id.* at *4. Finding that it is *not impossible* that an ATDS may have been used is *not* the right test. The correct standard is whether a claim is *plausible*, that is, the "factual content … allows the court to draw **the reasonable inference** that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (emphasis added). If allegations are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

Here, there is no factual content alleged in the Complaint that permits an inference that the Link2Tek platform has any capacity to generate telephone numbers at all, let alone randomly or sequentially as the statute requires. Indeed, it is a complete non-sequitur to allege that the Vallas campaign obtained telephone numbers from a third-party supplier of likely voters in the Chicago area, but nevertheless conclude that the Link2Tek platform has the distinct capacity to randomly or sequentially generate numbers. This would be analogous to stopping someone leaving a grocery store and exclaiming, "Wow, you have a lot of food there, you must be a farmer!" No reasonable person would make such an inference, just as no one can reasonably infer that because the Defendants allegedly obtained telephone numbers **from a third party**, the Link2Tek platform can somehow generate random or sequential telephone numbers. These dots simply cannot be connected.

Further, allegations that a high volume of messages were generic in nature were held to support the inference that the messages were initiated *without human intervention* – **the vacated autodialer standard**. But these same allegations do not logically support any inference that the communications system used to initiate the messages can also randomly or sequentially generate

9

the telephone numbers to be called – **the statutory standard**. Indeed, it misses the larger point that the FCC had to effectively ignore the statute when it came up with the "human intervention" standard in order to sweep in communications equipment that *did not* meet the statutory definition of an autodialer. But the FCC's attempts to rewrite and broaden the scope of the law have been vacated, which necessarily had the effect of limiting the types of equipment that could be deemed an autodialer. At bottom, one cannot reasonably infer that the Link2Tek platform meets the statutory definition of an autodialer when the only allegations regarding the source of the Plaintiffs' telephone numbers are that they came from a third party. Plaintiffs' allegations are not even consistent with liability under the statute, let alone plausible, as required under the proper standard of review. *Iqbal*, at 678 (quoting *Twombly*, 550 U.S. at 557).

## II. Messaging Platform Providers Cannot Be Liable For Transmitting Their Customers' Messages

Plaintiffs' vague allegations against Link2Tek indiscriminately lump it in with the Vallas campaign, thereby failing basic pleading requirements. That is, a plaintiff must allege with specificity the actions of each individual defendant that give rise to the plaintiff's claims. *See, e.g.*, *Ewing v. Encor Solar, LLC*, Case No. 18-cv-2247-CAB-MDD, 2019 WL 277386, at *7 (S.D. Cal. Jan. 22, 2019) (dismissing TCPA claims because complaint only offered "confusing allegations regarding the role each of the defendants played in the purported scheme, often using defendants' names interchangeably and switching the theory of control.").[8] This failure alone should entitle Link2Tek to be dismissed from this case. Link2Tek nevertheless details below that it cannot be liable for Plaintiffs' claims as a matter of law because what it is accused of doing – transmitting Link2Tek's customer's messages – is not actionable under the TCPA.

---

[8] *See also Garcia v. Seterus, Inc.*, No. CV F 12-2049 LJO SAB, 2013 WL 1281565, at *5 (E.D. Cal. Mar. 27, 2013) (dismissing complaint because it "lumps defendants and others together and fails to distinguish adequately claims and alleged wrongs among defendants.").

That is, another required element of a TCPA claim is that the defendant *made the call*. 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States . . . (A) to **make** any call. . . .") (emphasis added). As detailed above, the FCC has clarified in its regulations implementing the TCPA that making a call means to be the person or entity that *initiates* the message. *See* 47 C.F.R. § 64.1200(a)(1)(iii) (making it unlawful to "**initiate** any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipient's prior express consent) (emphasis added).

This exact language matters. The FCC's decision clarifying that "to make" a call means to be the person or entity "initiating" the call is entitled to Hobbs Act deference, thus requiring district courts to apply this decision. *See*, *e.g.*, *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010). By analogy, the TCPA makes it actionable for a person to place an unlawful letter in the mailbox. It doesn't hold the U.S. Postal Service liable for delivering that letter. By ruling that only message *initiation* – and not message *transmission* – is actionable, the FCC has made the decision that intermediaries involved in message transmission should not be liable. In fact, the FCC was simply following the policy Congress intended.[9]

The TCPA thus does not, and has never, imposed liability on any entity simply because it was involved in the *transmission* of a message. But that is precisely what Plaintiffs accuse Link2Tek of doing: Plaintiffs seek to hold Link2Tek responsible because it allegedly "**transmitted** the Political Text Messages." *Id.*, ¶ 93 (emphasis added). Indeed, Plaintiffs also allege that "Link2Tek provided Vallas with technology that *provided Vallas* with the ability to

---

[9] The TCPA's legislative history makes clear that "[t]he regulations concerning the use of [automatic telephone dialing systems] apply to the persons *initiating* the telephone call or sending the message and **do not apply to the** … entity **that transmits the call or message and that is not the originator or controller of the content of the call or message**." *See* S. Rep. No. 102-178, § 2, at 1977 (1991) (emphases added).

11

**transmit and/ initiate** thousands of unsolicited text messages … ." SAC, ¶ 12 (emphasis added). Plaintiffs further allege that Link2Tek is a text messaging platform doing business in North Carolina, but "all of the conduct giving rise to the claims occurred within this District." *Id.*, ¶ 15. Even if it was not expressly clear that Plaintiffs are attempting to hold Link2Tek liable because it transmitted its customer's messages, which is exactly what Plaintiffs allege, the only plausible way of interpreting Plaintiffs' Second Amended Complaint is that the Vallas campaign used the Link2Tek platform from their campaign headquarters in Chicago to initiate their own messages.

Again, the Court need only take Plaintiffs at their own word: the Link2Tek platform allowed the Vallas campaign to initiate their text messages that Link2Tek further transmitted, which is what communications companies do. SAC, ¶¶ 12, 93. Plaintiffs have once again pled themselves out of court. *See, e.g.*, *Rinky Dink*, 2015 WL 778065, at *8 (ruling that communications platform operator could not be liable for transmitting its customer's calls); *see also Payton*, 164 F. Supp. 3d at 1058 (holding web-based texting messaging platform operator similar to Link2Tek could not be liable under the TCPA, and ruling that Plaintiff's view of TCPA liability would impermissibly "impose TCPA liability on any carrier in the call flow that simply transmits the message, with no logical cut off.") (citation and quotation marks omitted); *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044 (S.D. Cal. 2015) (same); *Smith v. Securus*, 120 F. Supp. 3d 976, 985 (D. Minn. 2015) ("The Court finds that because Securus did not 'make' or initiate the alleged phone calls, Plaintiffs' claims fail as a matter of law.").

Plaintiffs also assert in their Second Amended Complaint that Link2Tek provided "technical assistance" to the Vallas campaign. SAC, ¶¶ 35, 37. Such allegations also independently fail to state a claim under the TCPA because there is no "aiding and abetting"

12

liability for TCPA violations. Indeed, as the Supreme Court has ruled, "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, **there is no general presumption that the plaintiff may also sue aiders and abetters**." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994) (emphasis added);[10] *see also Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 746 (D. Md. 2008) (ruling that "this Court will not imply expanded liability under the TCPA for aiding and abetting."); *Clark v. Avatar Techs. PHL, Inc.*, Civil Action No. H-13-2777, 2014 WL 309079, at *3 (S.D. Tex. Jan. 28, 2014) (dismissing TCPA claim with prejudice against VoIP provider accused of transmitting its co-defendant's messages because "Congress did not intend to allow secondary [TCPA] liability on telecommunications carriers based on an allegation of conspiracy" to transmit messages).

In short, whether Plaintiffs are accusing Link2Tek of transmitting their customer's text messages, or of aiding and abetting the Vallas campaign in "sending" its messages, the result is the same. Plaintiffs have failed to state any claim against Link2Tek and it should be dismissed from this case on this independent basis.

## Conclusion

Plaintiffs fundamentally misapprehend the TCPA, both as it exists today and as it was interpreted before the *ACA* decision. Because Plaintiffs have alleged that they were specifically

---

[10] In fact, the Third Circuit recently noted *sua sponte* that the Supreme Court's *Central Bank of Denver* decision should likely preclude an interpretation of a quasi-penal statute like the TCPA that would "extend liability beyond the scope of conduct prohibited by the statutory text." *City Select Auto Sales Inc. v. David Randall Assocs.,Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018) (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994)). Ultimately, the 3rd Circuit ruled in favor of the TCPA defendant on different grounds because it was "reluctant to decide such an important question when it was neither litigated in the District Court nor fully briefed and argued on appeal." *Id.* at 161.

targeted through the use of a curated list, Plaintiffs have pled themselves out of Court under the existing TCPA law of this District. The Link2Tek platform cannot be an autodialer under these facts.

It has also never been the law that communications service providers like Link2Tek can be liable for transmitting their customers' messages, or vaguely "aiding and abetting" them to do so. Only message initiation is actionable under the TCPA, and Plaintiffs simply do not allege any facts to support a claim that they fail to even make against Link2Tek.

Accordingly, the Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated: May 22, 2019

Respectfully submitted,

**ARENT FOX LLP**

By: __/s/   J.H. Jennifer Lee__

J.H. Jennifer Lee (ARDC #6290027)
Adam D. Bowser (*Pro Hac Vice Pending*)
ARENT FOX LLP
1717 K Street NW
Washington, DC 20006-5344
Telephone: 202.857.6088
Facsimile: 202.857.6126
jenny.lee@arentfox.com
adam.bowser@arentfox.com

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on May 22, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

<u>/s/ J.H. Jennifer Lee</u>
J.H. Jennifer Lee