# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **JEFF KLUEH** and **JAKE CAMPBELL**, individually, and on behalf of all other similarly situated Illinois residents, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 1:19-cv-00249 |
| **PAUL VALLAS FOR ALL CHICAGO**, and **LINK2TEK, LLC**. | ) Judge Andrea R. Wood ) Magistrate Judge Susan E. Cox ) |
| Defendants. | ) |

## REPLY IN SUPPORT OF
## <u>MOTION TO DISMISS</u>

i

**Introduction**

Plaintiffs' Response does nothing to save their TCPA claims from dismissal because their well-pled factual allegations still only lead to the conclusion that the three text messages at issue were targeted communications that could not have been autodialed under current law. Indeed, Plaintiffs' counsel failed to inform the Court that his firm had indistinguishable autodialer claims dismissed weeks before filing Plaintiffs' Response, with Judge Coleman ruling:

> The Court finds that Bader has not adequately alleged the use of an autodialer. Simply put, Bader does not put forth any factual allegations that suggest Navient Solutions dialed his number using equipment that had the capacity to generate random or sequential numbers. . . . While this may have established the use of an autodialer under prior FCC declarative rulings, *ACA International* establishes that Bader must assert facts that make it plausible Navient Solutions used equipment with the capabilities to generate numbers randomly in order to allege the use of an autodialer.

*Bader v. Navient Sols., LLC*, No. 18-cv-1367, 2019 WL 2491537, at *2 (N.D. Ill. June 14, 2019).

This case is no different. Plaintiffs specifically allege in their Second Amended Complaint ("SAC") that the Vallas campaign acquired their telephone numbers from a third party provider of curated lists of potential voters meant "to only include registered voters who lived in the City of Chicago." SAC, ¶¶ 44-45. These are the *only* allegations regarding how Plaintiffs' telephone numbers were obtained by the Vallas campaign. There are thus *no* well pled allegations that can plausibly support the inference that Link2Tek's platform randomly or sequentially generated Plaintiffs' telephone numbers. Again, according to Plaintiffs, the Link2Tek platform *did not* generate their telephone numbers. Plaintiffs' claims should be dismissed for the same reasons as in *Bader*.

As for their claim against Link2Tek for *transmitting* the messages the Vallas campaign initiated, Plaintiffs have made it crystal clear that they do not understand the TCPA. Message

transmission is not actionable under the TCPA. Message transmission has never been actionable under the TCPA. And this cannot be challenged in district court litigation under the Hobbs Act. Defendants' Memorandum In Support of Motion to Dismiss ("Mem.") at 11. Plaintiffs' legal contentions are thus not warranted by existing law, there is no basis for reversing this existing law through this litigation, and Link2Tek should be dismissed with prejudice.

## Argument

I. **Plaintiffs' Non-Conclusory Allegations Cannot Logically Support Any Inference That The Link2Tek Platform Can Randomly Or Sequentially Generate Telephone Numbers**

Defendants established that Plaintiffs' only non-conclusory allegations were that they were specifically targeted through the use of a curated list obtained from a separate third party, and thus Plaintiffs have pled themselves out of court under the existing TCPA law of this District. Mem. at 4-10. Indeed, as detailed at length in their opening brief, Defendants demonstrated that the TCPA landscape has changed dramatically after the FCC's contradictory and overreaching interpretations of what constitutes an autodialer were vacated. *Id.* at 4-6. Dispositive here, "[c]**urated lists** developed without random or sequential number generation capacity **fall outside the statute's scope.**" *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018) (emphases added).[1]

Plaintiffs do not dispute that the FCC's 2003 and 2008 TCPA Orders were invalidated by

---

[1] *See also,* Mem. at 4-6, *Bader*, *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927 (N.D. Ill. 2018), *Folkerts v. Seterus, Inc.*, CIV No. 17-C-4171, 2019 WL 1227790, at *6 (N.D. Ill. Mar. 15, 2019), *Gadelhak v. AT&T Servs.*, No. 17-cv-1559, 2019 WL 1429346 (N.D. Ill. Mar 29, 2019), *Gary v. TrueBlue, Inc*., No. 17-cv-10544, 2018 WL 3647046, at *6 (E.D. Mich. Aug. 1, 2018) ("Applying *ACA Int'l*, the FCC's rulings–including the ATDS definition which covered equipment that can only dial numbers from a set list–are no longer valid."); *Sessions v. Barclays Bank Delaware*, No. 1:17-cv-1600, 2018 WL 3134439, at *4 (N.D. Ga. June 25, 2018) ("As a result [of *ACA Int'l*], the Court finds that the FCC's prior orders with regard to interpretations of 'capacity' and descriptions of the statutorily enumerated functions a device must perform to be an ATDS were vacated in ACA International.").

the D.C. Circuit's *ACA Int'l* decision. This alone is fatal to their autodialer claims. Yet they apparently believe that if they tap their heels together and say "hyper-technical argument" and "doth protest too much" enough times,[2] they can be transported back to when the "human intervention" test was the standard for what equipment constituted an autodialer and what allegations would plausibly support such a claim.

But this is no longer the case because this is no longer the law. The actual *statutory* standard is whether the system used to initiate the messages can itself randomly and sequentially generate telephone numbers, and then dial those numbers. *See Bader*, 2019 WL 2491537, at *2 ("While this may have established the use of an autodialer under prior FCC declarative rulings, *ACA International* establishes that Bader **must assert facts that make it plausible** Navient Solutions used equipment **with the capabilities to generate numbers randomly in order to allege the use of an autodialer**.") (emphases added).

The unavoidable reality in this case is that Plaintiffs' autodialer claims are based entirely on a *non-sequitur*: the Vallas campaign obtained Plaintiffs' telephone numbers from a third-party, *ergo*, the Link2Tek platform itself can generate random and sequential telephone numbers. This argument is not even logical, let alone plausible. Defendants' critique of Plaintiffs' allegations is thus not technical in any way; it is simply that Plaintiffs' arguments are illogical.

Indeed, none of Plaintiffs' allegations make it plausible that Link2Tek platform has the present capacity to generate and then dial random or sequential telephone numbers—the only relevant inquiry here. All of their non-conclusory factual allegations plainly state that a Link2Tek customer must obtain telephone numbers from another source, and that the only

---

[2] Even more bizarrely, Plaintiffs assert in the first sentence of their Response to the Motion to Dismiss ("Response") that the Vallas campaign was sending unsolicited *telemarketing* messages. Response at 1. Much like their complaints, their Response appears to be a copy-and-paste exercise as well.

added functionality the Link2Tek platform offers is its ability to confirm a customers' telephone numbers are presently mobile telephone numbers against *another third-party source*. SAC, ¶¶ 28, 44-45. That is, a Link2Tek customer like the Vallas campaign can confirm that the likely voters they wish to engage on a person-to-person level are presently using a wireless service so that a campaign staffer does not waste time initiating a text message to a landline telephone service incapable of receiving texts. Beyond separately parroting the statutory language, Plaintiffs therefore do not include any allegations to support the inference that the Link2Tek platform can randomly or sequentially generate telephone numbers.

Fatal to their claims, to be plausible, allegations have to be suggestive of the ATDS use, not merely compatible with such use. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citation and quotation marks omitted); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-cv-2962, 2013 WL 3026641, at *2 (S.D. Cal. Jun. 13, 2013) (granting motion to dismiss where plaintiff's allegations of the generic and impersonal text messages made it "conceivable" that they were sent with an ATDS, but not "plausible," as it was "just as conceivable that they were done by hand").

Plaintiffs argue that they cannot be expected to plead any additional "technical" facts regarding the Link2Tek platform without having the ability to engage in discovery. Response at 10-11. That is, of course, not true. TCPA plaintiffs can certainly plead facts to suggest random or sequential number generation and dialing – such as, for example, where the call is truly random, and the substance of the call suggests no connection between the calling entity and the number. But here, just the opposite is true. It is clear that the Vallas campaign was attempting to contact

registered Chicago voters with cell phones regarding the upcoming mayoral election in Chicago, and the Vallas campaign did in fact contact two such Chicago residents. SAC, ¶¶ 3-4. As plaintiffs in a TCPA case, Plaintiffs are required to allege non-conclusory facts to plead the use of an ATDS, one of the elements of the TCPA cause of action, before they can unlock the doors of discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Here, they have alleged that they were expressly targeted by the Vallas campaign, who acquired their telephone numbers from an unrelated third party. That simply does not make it any more likely, or plausible, that the Link2Tek platform itself has the present capacity to generate random or sequential numbers and then to dial them.[3]

      Plaintiffs' claims therefore fail against both Defendants on this ground alone.

**II.**      **Plaintiffs' Belief That They Can Sue Message Transmitters Is Not Warranted By Existing Law**

      Link2Tek established that the TCPA only prohibits the ***initiation*** of certain messages made without the requisite consent from the message recipient, and message ***transmission*** is not separately actionable.[4] Mem. at 10-13. In other words, a TCPA plaintiff simply has no legal basis to sue a communications service provider because it transmitted its customers' messages. Indeed, Congress could not have been clearer on this point when it enacted the TCPA: "[t]he regulations concerning the use of [automatic telephone dialing systems] apply to the persons ***initiating*** the telephone call or sending the message and ***do not apply*** to the . . . entity **that transmits the call or message**. . . . " *See* S. Rep. No. 102-178, § 2, at 1977 (1991) (emphases

---

[3] Plaintiffs cite a number of cases that rely on the proposition that predictive dialers are a form of ATDS and the pleading standards related to this specific and distinct technology. Response at 7-13. All of these cases pre-date *ACA Int'l* and, as explained in Defendants' opening brief, are clearly at odds with the controlling statutory definition of ATDS, as numerous courts in this District have found. Mem. at 4-6.

[4] *See* 47 C.F.R. § 64.1200(a)(1)(iii) (making it unlawful to "*initiate* any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipient's prior express consent) (emphasis added).

added). And Judge Lefkow could not have been clearer when she dismissed a platform operator from an indistinguishable case, ruling that the conflation of message initiation and message transmission would improperly "impose TCPA liability on any carrier in the call flow that simply transmits the message, with no logical cut off." *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1058 (N.D. Ill. 2016).

To the extent that there was any conceivable doubt that Plaintiffs were seeking to hold Link2Tek liable under a legal theory that is not warranted by existing law, Plaintiffs removed it in their Response. Plaintiffs expressly reaffirm their allegations that the Vallas campaign initiated the text messages at issue "in the campaign room boiler-room [*sic*]," and "Link2Tek, as a so-called messaging platform providers [*sic*] can be liable for transmitting Vallas' illegal text messages." Response at 9, 15. Dismissal with prejudice is warranted here.

Indeed, notably absent from Plaintiffs' Response is a decision on the merits by any court anywhere in the country which held that a platform operator can be liable for transmitting its users' messages. That is because there are none. On the contrary, as Link2Tek demonstrated, every court to address indistinguishable TCPA claims lodged against platform operators has ruled that the platform operator cannot be liable. Mem. at 12 (collecting cases); *see also Selou v. Integrity Sol. Servs. Inc.*, No. 15-cv-10927, 2016 WL 612756, at *4 (E.D. Mich. Feb. 16, 2016) (applying binding FCC order and holding that "entities that merely make available technology by which users may make phone calls are not the makers of those calls under the TCPA and thus **do not have liability under the statute**) (emphasis added); *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-7129, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (same).

Under the Hobbs Act, these courts were simply applying the FCC's binding interpretation that message transmission cannot be actionable under the statute, as Congress originally

instructed the FCC. Indeed, this was reflected in the FCC's first order implementing the TCPA, in which it held that only "the users of the services, not the carriers providing the services, [can] be held liable, consistent with Congress' policy that carriers not be held responsible for the content of messages transmitted through the network." *1992 TCPA Order* at n. 83; *see also 2015 TCPA Order*, ¶ 29 (noting that Congress "put the responsibility for compliance with the law directly on the party that 'makes' or 'initiates' automated and prerecorded message calls.").[5] In other words, the FCC reiterated what the law has always stated after a spike in baseless lawsuits by the TCPA Plaintiff's Bar that sought to hold every entity in the message flow liable.

Plaintiffs do not contest this settled law. Nor could they. Instead, when they briefly addressed why they sued Link2Tek, they relied on a completely inapposite case concerning whether Allstate could be vicariously liable for the telemarketing calls placed *on its behalf* by its alleged agent. Response at 15 (citing *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150 (N.D. Ill. 2014)). *Charvat* has nothing to do with platform operator liability, or lack thereof, under the TCPA. It also has no logical connection to the actual *and* alleged relationship between the Vallas campaign (platform user initiating its own messages) and Link2Tek (platform operator further transmitting its customers messages).

Plaintiffs' suggestion that *Charvat* is in any way relevant turns vicarious liability on its head by apparently arguing that a carrier vendor (Link2Tek) can be vicariously liable for transmitting messages pursuant to the express instructions of the directly liable party (the Vallas campaign). This is not remotely how vicarious liability works. *See* Restatement (Third) of Agency § 7.01 Comment d (2006) (explaining that "there is no principle of 'respondeat

---

[5] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd. 8752 (1992) ("*1992 TCPA Order*"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ("*2015 TCPA Order*").

inferior'"). Stated differently, vicarious liability/respondeat superior can only go up to the Vallas campaign, not down to Link2Tek.

At bottom, Plaintiffs cannot expressly allege that the Vallas campaign initiated the text messages at issue, concede that district courts are bound to apply the FCC's binding orders holding that only message initiation is actionable, and still somehow believe there is a non-frivolous argument for reversing existing law through this litigation. That circle cannot logically be squared. Indeed, the claims against Link2Tek are not just unreasonable by objective standards, they are unreasonable even by the TCPA Plaintiff's Bar's standards. That is, when communications platform operators are initially swept up in cookie-cutter TCPA complaints, plaintiffs' attorneys routinely and voluntarily dismiss such claims rather than continue to advocate legal theories that are not warranted by existing law:

- *Sloan v. Securus Technologies, Inc.*, No. 1:16-cv-2874 (S.D. Ind.) (**Plaintiffs' firm** voluntarily dismissed communications service provider after being served with Rule 11 motion);

- *Glauser v. Twilio, Inc.*, No. 4:11-cv-2584 (N.D. Cal. Apr. 22, 2014) (case was voluntarily dismissed against communications service provider because it was a passive conduit for its customers' text messages);

- *Ryan v. Jersey Mike's Franchise Systems*, No. 13-cv-1427 (S. D. Cal.) (plaintiff voluntarily dismissed case against text messaging platform operator Club Texting);

- *Shay v. CallFire, Inc.*, No. 14-cv-1257 (S.D. Cal.) (case was voluntarily dismissed against service provider).

- *Couser v. Pre-Paid Legal Services*, No. 3:12-cv-2575 (S.D. Cal.) (same);.

- *Salcedo v. Diamond*, No. 14-cv-6291 (S.D. Fla.) (same)

- *Malik v. F-19 Holdings, LLC*, No. 5:15-cv-130 (E.D.Ky. Nov. 16, 2015) (after filing a motion to dismiss establishing that platform operator could not be liable and that plaintiff's claims were frivolous, plaintiff voluntarily dismissed case rather than respond to motion to dismiss);

- *Bittings v. Tele-Town Hall, LLC*, No. 1:16-cv-9519 (D.N.J. Jan. 19, 2017) (voluntarily dismissed platform operator before needing to file answer):

- *Bezdikian v. Valley Gym Corp.*, No. 3:18-cv-4372 (N.D. Cal.) (Plaintiff voluntarily dismissed text message platform rather than respond to motions for sanctions);

- *Frank v. South Aiken Fitness, Inc.*, No. 1:18-cv-02452 (D.S.C.) (same).

This list is certainly not exhaustive, and there's a pattern here for a reason: it is objectively unwarranted to file suit against a communications service provider like Link2Tek under the TCPA on the ground that it transmitted a text message its *customer admittedly* initiated through its service. Plaintiffs' claims against Link2Tek should be dismissed with prejudice. *See Selou*, 2016 WL 612756, at *4 (dismissing TCPA claims against service provider with prejudice because it was clear plaintiff was pursuing legal theory foreclosed by binding FCC orders).

## Conclusion

Plaintiffs continue to fundamentally misapprehend the TCPA. Because Plaintiffs have only alleged that the users of the Link2Tek platform can contact wireless subscribers targeted through the use of a curated list, Plaintiffs have pled themselves out of Court under the existing TCPA law of this District. The Link2Tek platform cannot be an autodialer under these facts.

Second, Plaintiffs take their reliance on non-sequiturs to the extreme by effectively arguing that Link2Tek, a communications service provider, is the principal of Paul Vallas for All Chicago, a campaign committee. This is a fundamentally flawed argument to defend what is an

unmeritorious legal claim: message transmission is not, and has never been, actionable under the TCPA. Link2Tek cannot be liable for the Vallas campaign's use of its platform on this independent basis.

Accordingly, the Defendants respectfully request that the Court grant their Motion to Dismiss, with prejudice.

Dated:  August 7, 2019

Respectfully submitted,

**ARENT FOX LLP**

By:  /s/   **J.H. Jennifer Lee**

J.H. Jennifer Lee (ARDC #6290027)
Adam D. Bowser (*admitted Pro Hac Vice*)
ARENT FOX LLP
1717 K Street NW
Washington, DC 20006-5344
Telephone: 202.857.6088
Facsimile: 202.857.6126
jenny.lee@arentfox.com
adam.bowser@arentfox.com

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on August 7, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

<u>/s/ J.H. Jennifer Lee</u>
J.H. Jennifer Lee